IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DUBUQUE DIVISION

UNITED STATES OF AMERICA,                    No. CR21-1009-CJW

       Plaintiff,

                              TRANSCRIPT OF HEARING
   vs.                                  ON MOTION FOR AMENDED
                              CONDITIONS OF
EMILY ANN NELSON,                            RELEASE

       Defendant.
_____/


       The Hearing held before the Honorable Mark A.
Roberts, Magistrate Judge of the United States District
Court for the Northern District of Iowa, at the Federal
Courthouse, 111 Seventh Avenue Southeast, Cedar Rapids,
Iowa, June 16, 2021, commencing at 9:58 a.m.


APPEARANCES

For the Plaintiff:      DAN CHATHAM, ESQ.
                        Assistant United States Attorney
                        111 Seventh Avenue Southeast
                        Cedar Rapids, IA 52401

For the Defendant:      MARK C. MEYER, ESQ.
                        Kinnamon, Kinnamon, Russo & Meyer
                        Suite 425
                        425 Second Street Southeast
                        Cedar Rapids, IA  52401

Also present:           Kristin Hinz, U.S. Probation

Transcribed from        Shelly Semmler, RDR, CRR
digital recording by:   320 Sixth Street
                        Sioux City, IA  51101
                        (712) 233-3846

Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com
Reproduction without permission prohibited
Case 2:21-cr-01009-CJW-MAR   Document 56   Filed 03/16/22   Page 1 of 34

1          (The following transcript was prepared from an audio

2     recording.)

3                              * * * *

4          THE COURT:  Please be seated.  The matter

5     before the Court is the United States versus Emily Ann

6     Nelson, Number 21-CR-1009.  United States is represented

7     by Assistant United States Attorney Dan Chatham.  The

8     defendant is here in person with her attorney, Mark

9     Meyer.  The matter comes on for a hearing on the

10    defendant's motion for amended conditions of release

11    pursuant to 18 United States Code Section 3142(c)(3).

12         I note from the government's argument that the

13    government contends that because the defendant wasn't

14    released that perhaps that would be proceeding under the

15    wrong section of the United States Code.  The government

16    did point out that under 18 U.S.C. section 3142(f) that

17    the Court may reopen a detention hearing and reconsider

18    the issue of detention hearing.

19         Mr. Meyer, what's your position?  Is that how you're

20    suggesting the Court should proceed?

21         MR. MEYER:  I think you can proceed under

22    either one of those sections, (c)(3) or (c)(f) (sic).

23    I'm -- that's our position.

24         THE COURT:  And, Mr. Chatham, is there

25    objection to proceeding under 3142(f)?

```
 1          MR. CHATHAM:  Your Honor, the problem at this
 2    point with proceeding under 3142 -- excuse me, 3142(f) is
 3    the fact -- well, I guess -- I suppose here the defendant
 4    has not ordered the transcript of the prior hearing, so I
 5    know the Court probably has access to some form of the
 6    recording or the transcript there, but the factors that
 7    were before the Court and the facts of the case are
 8    certainly pertinent to any reopening of the issue of
 9    detention.  But if the Court were so inclined, I think
10    the issue would be the same.  The Court -- more or less
11    the same.  I think the Court can take a look at the same
12    factors, but I just note the -- the hampering of this
13    particular proceeding in that the defendant has not
14    ordered the detention hearing transcript.
15          THE COURT:  All right.  Thank you, Mr. Chatham.
16    And I guess that is something to consider with respect to
17    the transcript.  But I was just trying to get us all on
18    the same page about how we are proceeding under the code.
19       Well, it is your motion, Mr. Meyer, and I will let
20    you proceed.
21          MR. MEYER:  Thank you, Your Honor.  The -- with
22    respect to the prior proceedings, there was a pretrial
23    services report, and that's part of the record.  I think
24    that outlines the original reasons for not releasing
25    Emily.  There was a recommendation.  So I'd ask the Court
```

1   to take notice of the pretrial services report in lieu

2   of, you know, a transcript of a detention hearing.  Even

3   though it's not all that favorable to Miss Nelson, that

4   does set forth the grounds for -- I think that the judge

5   considered in not releasing her.

6         THE COURT:  Well, I don't know about your

7   proposal that I consider it in lieu of the transcript.

8   But if you're just asking -- are you just asking at

9   this -- I consider it for the purposes of this hearing?

10         MR. MEYER:  Yes, so you're not operating on a

11   blank slate.

12         THE COURT:  Any objection to my consideration

13   of the pretrial services report for this hearing,

14   Mr. Chatham?

15         MR. CHATHAM:  No, Your Honor.

16         THE COURT:  Okay.  I have reviewed it in

17   detail, and I will formally consider it for the purposes

18   of this hearing.  Anything else, Mr. Meyer?

19         MR. MEYER:  Well, two things.  Number one, I

20   would proffer on behalf of Miss Nelson that as indicated

21   in the pretrial services report she has had -- come --

22   two pregnancies, came to full term.  She was not using

23   heroin at the time of those prior pregnancies, but she

24   was using marijuana, and she stopped using marijuana,

25   doesn't use drugs while she's pregnant.  And, you know,

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*Reproduction of transcript prohibited without consent*
Case 2:21-cr-01009-CJW-MAR  Document 56  Filed 03/16/22  Page 4 of 34

1 if she was released now, she -- after many months of

2 sobriety since her initial appearance in November of last

3 year, she certainly wouldn't use heroin or any other

4 drugs now.  So I'd proffer that on behalf of Miss Nelson.

5 　　　　　THE COURT:  Any objection to the proffer,

6 Mr. Chatham?

7 　　　　　MR. CHATHAM:  Your Honor, we do object to the

8 proffer.  I mean, the defendant is here.  If she wants to

9 testify as to what she did in the past and whether she

10 had used heroin in the past, she's certainly here and

11 could subject herself to cross-examination.  Just -- so I

12 guess -- I suppose the Court could consider it even over

13 our objection, but at a minimum, we would ask the Court

14 to take that for -- with whatever grain of salt that

15 would be appropriate given the nature of the proffer.

16 　　　　　THE COURT:  All right.  I will -- I will

17 consider that evidence or that proffer subject to the

18 government's objection.

19 　　　Anything else by way of proffer or evidence this

20 morning, Mr. Meyer?

21 　　　　　MR. MEYER:  One witness, Your Honor.

22 　　　　　THE COURT:  Please proceed.  Ma'am, if you'll

23 please come forward, and when you get to the middle of

24 the floor there, if you could just please stop and raise

25 your right hand.

```
 1            CHERYL NELSON, DEFENDANT'S WITNESS, SWORN
 2               THE COURT:  Now please watch your step as you
 3    go to that seat.  And then when you are seated, please
 4    adjust that microphone so that we can hear you and record
 5    you.  I need you to speak right into the microphone.
 6         Mr. Meyer?
 7                      DIRECT EXAMINATION
 8    BY MR. MEYER:
 9    Q.   Please state your name.
10    A.   Cheryl Nelson.
11    Q.   And, Cheryl, what town do you live in or near?
12    A.   We live in Manson, Iowa.
13    Q.   And who are you married to?
14    A.   Phillip Nelson.
15    Q.   All right.  Just -- are you employed outside the
16    home?
17    A.   Yes, I am.
18    Q.   Where do you work?
19    A.   I work for NEW Cooperative.
20    Q.   In what town?
21    A.   It's based out of Fort Dodge.
22    Q.   Do you work at home, or do you drive to Fort Dodge?
23    A.   I have an office which is in Pomeroy which is about
24    eight miles from our house, and I do travel from mill to
25    mill, but I am capable of working from home.
```

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*Reproduction without written copy is prohibited.*

Case 2:21-cr-01009-CJW-MAR   Document 56   Filed 03/16/22   Page 6 of 34

1  Q.   And what about Phillip?

2  A.   Phillip works at Trinity Regional Medical Center in

3  Fort Dodge.

4  Q.   What's -- what's -- what's his job there?

5  A.   His job title is director of facilities.  He's

6  basically in charge of all the facilities that are owned

7  by UnityPoint there in Fort Dodge.

8  Q.   How long have you lived in Manson area?

9  A.   We have been there six years now.

10  Q.   Who else lives in your residence?

11  A.   We have two minor children.

12  Q.   And it's been proposed by the defense that Emily

13  Nelson be released to your custody at least temporarily

14  in connection with her pregnancy and pending delivery of

15  a baby.  Are you onboard with that?

16  A.   Yes.

17  Q.   Okay.  And have you discussed conditions with Emily

18  if she were released to your and Phillip's care?

19  A.   Yes, we have.

20  Q.   What are the conditions that you've discussed with

21  Emily?

22  A.   The conditions are she is not to leave the house

23  alone.  She is not to be allowed any internet access, no

24  phone access unless otherwise supervised by her father

25  and I -- myself.  Basically the terms would be close to

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*

Case 2:21-cr-01009-CJW-MAR  Document 56  Filed 03/16/22  Page 7 of 34
*Reproduction without permission of the Court is prohibited*

1  house arrest.

2  Q.   And how would you -- would this just be voluntary on

3  her part?  I mean, how could those be enforced?

4  A.   My husband and I have discussed with our other 2

5  children which are 11 and 13 that they are to contact us

6  if we are not in the house if she is disregarding the

7  rules.  They are both onboard with this.  They would like

8  to support their sister.

9  Q.   And how is -- are you and Phillip out of the home

10  every day eight to five, or how does that work?

11  A.   My job is -- it's very lenient.  I've already

12  discussed the options with my -- my supervisor.  He's

13  very onboard with family -- family emergencies or family

14  conditions.  We have discussed that if I am to be out of

15  the home my husband could be at home.  His job's a lot

16  more demanding than mine, but he still is able to work

17  from home and has quite a bit of leave time that he can

18  take.

19  Q.   All right.  And then your 11- and 13-year-olds are

20  also --

21  A.   They are home most of the days, yes.

22  Q.   And have you as a family looked into how -- meeting

23  Emily's immediate medical needs?

24  A.   Yes.  With my husband working at the hospital, he's

25  already discussed with some people how to get ahold of an

```
 1   OB to make sure she is seen prior to delivery and how
 2   that works through the hospital.
 3   Q.   And would you or Phillip be willing to transport
 4   Emily to and from the jail according to whatever
 5   conditions the Court were to impose?
 6   A.   Yes.
 7          MR. MEYER:  That's all the questions I have,
 8   Your Honor.
 9          THE COURT:  Thank you, Mr. Meyer.
10      Mr. Chatham?
11          MR. CHATHAM:  Thank you, Your Honor.
12                    CROSS-EXAMINATION
13   BY MR. CHATHAM:
14   Q.   Ms. Nelson, has the defendant lived in your
15   residence before?
16   A.   Yes, she has.
17   Q.   And when was that?
18   A.   It would have been six or seven years ago, just
19   before we left our previous home.
20   Q.   So around -- now, you said you had lived -- you've
21   lived in Manson for about six years; is that right?
22   A.   Yes.
23   Q.   So it was before you lived in Manson?
24   A.   Yes.
25   Q.   And where were you living at the time?
```

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*Unauthorized reproduction of transcript prohibited*
Case 2:21-cr-01009-CJW-MAR   Document 56   Filed 03/16/22   Page 9 of 34

1  A.    We were living in Alta, Iowa.

2  Q.    How long did this defendant live with you?

3  A.    Approximately six months.

4  Q.    During that time do you know, did she incur any

5  criminal charges?

6  A.    Not that I was aware of, no.  She was trying to get

7  custody of her other two children back from the state of

8  Florida.  We were trying to help her with that.

9  Q.    So she does not have custody of her other two

10  children; correct?

11  A.    No.

12  Q.    And those two children are actually taken care of by

13  her -- their father's parents; correct?

14  A.    As far as I know, yes.

15  Q.    And during that time the defendant was an active

16  drug user when she was living in your residence?

17  A.    Honestly I could not answer that question.  I don't

18  know for sure.

19  Q.    Sure.  She wasn't employed at all, though, during

20  that time; correct?

21  A.    Yes, she was.

22  Q.    She was.  Where was she employed?

23  A.    She was first employed at the Buena Vista Regional

24  Medical Center as a housekeeper, and then she was working

25  for a -- another lady who cleaned homes.

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
Case 2:21-cr-01009-CJW-MAR   Document 58   Filed 03/16/22   Page 10 of 34
*Reported in computerized shorthand*

```
 1   Q.   But eventually she moved back to Dubuque; correct?
 2   A.   Yes, she did.
 3           MR. CHATHAM:  No further questions.
 4           THE COURT:  Thank you, Mr. Chatham.
 5       Mr. Meyer?
 6           MR. MEYER:  Just one more question.
 7                   REDIRECT EXAMINATION
 8   BY MR. MEYER:
 9   Q.   You don't propose to actually become the guardian of
10   the child act -- after it is born?
11   A.   No, we do not.
12   Q.   Other arrangements have been made?
13   A.   Yes, they have.  Her brother and his girlfriend have
14   already started the guardianship proceedings.
15   Q.   All right.  So your role would be essentially giving
16   her a place to live before and after she gives birth?
17   A.   Yes.
18   Q.   Until she's ordered to return?
19   A.   Yes.
20           MR. MEYER:  That's all, Your Honor.
21           THE COURT:  Thank you, Mr. Meyer.
22       Mr. Chatham?
23           MR. CHATHAM:  Nothing further.
24           THE COURT:  Ms. Nelson, I was just looking up
25   Manson here on my phone, and it looks like that's west of
```

```
1    Fort Dodge?  How far west of Fort Dodge is it?
2              THE WITNESS:  20 minutes, 25 minutes.
3              THE COURT:  Okay.  And how long did you say
4    you've lived there?
5              THE WITNESS:  It will be six years in July.
6              THE COURT:  Has Ms. Nelson visited you there
7    previously?
8              THE WITNESS:  I don't believe she has, no.
9              THE COURT:  Do you know if she has friends in
10   the Fort Dodge or other places near Manson?
11             THE WITNESS:  Not that I'm aware of, no.
12             THE COURT:  And maybe this shouldn't be of my
13   concern, but since -- it's my understanding that Emily
14   Ann Nelson is not actually Phillip's daughter.  Is that
15   correct?
16             THE WITNESS:  Biologically, no, she is not.
17             THE COURT:  Is she adopted?
18             THE WITNESS:  It was a complicated -- he
19   thought he was the father until he found out otherwise.
20             THE COURT:  Okay.  And I guess that's not
21   really the point of my questioning.  She's 28, and she
22   wouldn't be eligible, as I understand it, to be on his
23   health insurance and perhaps your health insurance.  Is
24   that your understanding?
25             THE WITNESS:  That would be correct, yes.
```

```
 1              THE COURT:  Have you thought about how you're
 2     going to pay for the considerable expense of the birth of
 3     the child?
 4              THE WITNESS:  No.
 5              THE COURT:  Do you know if Emily has made some
 6     inquiry into that and tried to figure out if she's
 7     eligible for Title XIX or some other assistance to pay
 8     for that?
 9              THE WITNESS:  I don't know.
10              THE COURT:  Okay.  You understand that while
11     she would be -- this is my understanding anyway, that
12     while she's in the custody of the marshals that the
13     government would have to provide for her medical
14     conditions including her birth.  Do you -- as I
15     understand, you have no idea what her plan is to have
16     those procedures paid for; is that right?
17              THE WITNESS:  I have no idea.
18              THE COURT:  Okay.  All right.  Thank you.
19     Those are all the questions I have for you.  Let's see if
20     that prompted anything else from the lawyers.
21         Mr. Meyer, anything?
22              MR. MEYER:  Yeah.  Emily has Title XIX.
23              THE COURT:  Any objection to that proffer,
24     Mr. Chatham?
25              MR. CHATHAM:  No, Your Honor.
```

1          THE COURT:  Any questions, Mr. Chatham?

2          MR. CHATHAM:  No, Your Honor.

3          THE COURT:  Thank you, Ms. Nelson.  You may

4     step down.  Appreciate you coming this morning.

5       Anything else, Mr. Meyer?

6          MR. MEYER:  No, Your Honor.

7          THE COURT:  With respect to your proffer, I

8     don't know if you know this or you can find out for me.

9     Do you know if Ms. Nelson has been receiving any

10    substance abuse treatment since she's been in jail?

11         MR. MEYER:  No.  That's not afforded to

12    pretrial detainees I don't believe.

13         THE COURT:  That was my understanding, but I

14    appreciate you confirming that.

15         MR. MEYER:  We did -- one of the things we were

16    thinking about doing is there's a program called Heart of

17    Iowa here in Cedar Rapids.  It's for pregnant -- well,

18    for young women with drug problems.  It would have been

19    perfect, but because she's not using drugs now, she

20    doesn't qualify for Heart of Iowa.  So we did look into

21    sort of a combination of drug counselling and care, but

22    because she's not using, she's not eligible for it.

23         THE COURT:  Okay.  Thank you, Mr. Meyer.

24       Mr. Chatham, any evidence or proffer you'd like to

25    make?

Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com
Reporter's Certified Official Transcript
Case 2:21-cr-01009-CJW-MAR   Document 62   Filed 03/16/22   Page 14 of 34

```
 1            MR. CHATHAM:  No, Your Honor.

 2            THE COURT:  Okay.  Then let's proceed to

 3    arguments.  Mr. Meyer?

 4            MR. MEYER:  Judge, I'd just rely on the

 5    information you've heard today.  It's not -- not that

 6    often that -- you know, that there's a woman who's about

 7    to give birth who's in jail awaiting charges.  Maybe

 8    you've run into it before.  I'm not --

 9            THE COURT:  I have not.

10            MR. MEYER:  You have not, okay.  And the last

11    case I had was maybe 15, 20 years ago or something.  And

12    so I think it -- I don't think there would be arguably

13    any significant risk to the community if Emily were

14    released to, you know, her stepparents to give birth.

15    She has -- she's not used since November.  She's

16    proffered that when she's pregnant she doesn't use for --

17    you know, for whatever weight you give that to -- the

18    Court gives that.

19        You know, looking at it from the standpoint of the

20    child, the child would certainly be better off I think

21    if -- if the mother of the child were allowed more than

22    three days to bond.  I guess that's something that I left

23    out, Your Honor, is that I think I put it in the motion

24    that if she gives birth while she's in jail, she goes to

25    the hospital, she gives birth.  Three days later, boom,
```

Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com
Reporter's Certified Copy - Detention Hearing
Case 2:21-cr-01009-CJW-MAR   Document 52   Filed 03/16/22   Page 15 of 34

1   she's back in the jail, child goes somewhere else.  That

2   just doesn't seem to me to be optimal by any means for

3   the child or the mother or the long term for society.

4       I mean, what -- you know, but anyway, given the

5   obvious benefits to Emily and the child to have a longer

6   period of time after the child is born and some time, you

7   know, beforehand to get -- be seen by a doctor and her

8   care lined up in Fort Dodge and Manson versus the minimal

9   risk to society that -- and the minimal risk that she

10  won't appear, the safeguards that are in place -- she's

11  not going to be leaving the house.  I guess the Court

12  could impose as a condition of release if any of the

13  conditions that Ms. Nelson talked about are violated she

14  calls the Court.  I think she's the kind of person that

15  would do that.

16      But I just can't conceive that Emily Nelson, about

17  to give birth, is just going to get to Manson, Iowa, and

18  disregard all the rules imposed by the Court or her

19  parents.  That just -- the maternal instincts I think

20  would make the child the most important thing in her --

21  in her -- her universe.

22      So -- and given -- I guess the other thing I would

23  say is the basis for not allowing Emily to be released in

24  the first place is because she was a heroin addict.  And

25  as a result of being a heroin addict, she committed theft

1   and drug-related offenses, and she didn't do very well,

2   to say the least, on supervision.

3      Changed circumstances.  She's not using.  She's

4   pregnant.  She's going to give birth soon.  I don't think

5   you can realistically say, well, she didn't do well in

6   the past, bingo, she's not going to do well now.  Things

7   are totally different now.

8      And so given those altered circumstances, we'd ask

9   the Court to impose some condition so that she can give

10  birth with her family in Manson, be with the child for a

11  period of time.  I suggested 14 days.  I just picked that

12  number out of a hat.  It was longer than three days, you

13  know, probably not as long as necessary to really bond

14  with the child but nonetheless longer -- more than three

15  days.  It'd also give her some time to recover from the

16  birth.  I mean, giving birth is not, you know -- it's

17  hard work.  It's a lot of trauma and physical stress.

18     So that's what we're asking for, Judge, and ask that

19  you modify the conditions of release as we have proposed.

20       THE COURT:  Thank you, Mr. Meyer.

21     Mr. Chatham.

22       MR. CHATHAM:  Thank you, Your Honor.  Our

23  position in our brief I think pretty well encapsulates

24  what our argument is here, but I just wanted to touch on

25  a few of the points here.

1    I'm not taking away at all from Ms. Nelson's

2 sincerity -- Mrs. Nelson's sincerity in their desire to

3 try to keep the defendant on the straight and narrow if

4 she were to be in their house.  It does seem like this is

5 a family member who is attempting to do the right thing

6 by Ms. Nelson, by this defendant.

7    That does not mean that they have the capability of

8 doing so or that it is appropriate under the 3142(g)

9 factors to attempt to allow the defendant out of custody

10 pending trial and further proceedings in this matter.

11    First of all, as mentioned in the brief, the

12 citation -- the statutory citation by the defendant

13 doesn't apply in this circumstance.  Even if the Court

14 were to look at the thirty-one forty -- excuse me,

15 3142(f), I don't believe that that even contemplates what

16 the defendant is requesting here.  That contemplates

17 reconsideration of the order.  And at a detention

18 hearing, it's either up or down.  It's either detained,

19 or it's released on conditions.

20    And so I don't believe that 3142(f) even

21 contemplates this short, temporary release under these

22 types of conditions.

23    I was looking further this morning, and it's -- you

24 know, it's, frankly, not the government's job to do this,

25 to find the appropriate statutory citation, but looking

Case 2:21-cr-01009-CJW-MAR   Document 58   Filed 03/16/22   Page 18 of 34

 1   this morning I saw 3142(i) talking about the contents of

 2   a detention order.  At the tail end of that it says the

 3   judicial officer may by subsequent order permit the

 4   temporary release of the person in the custody of the

 5   United States marshal or another appropriate person to

 6   the extent that the judicial officer determines that such

 7   release to be -- excuse me, determines such release to be

 8   necessary for preparation of the person's defense or for

 9   another compelling reason.

10        That is probably the most appropriate avenue to

11   consider this particular request but -- because, first of

12   all, it appears to look directly at it.  Second of all,

13   it provides the Court a framework by which it should be

14   considering this particular request.

15        Under 3142(i), the Court would have to find that

16   release to be necessary either for preparation of the

17   defendant's defense, which obviously she's not claiming,

18   or for another compelling reason.  Nothing here today has

19   established anything that is necessary.  Even counsel's

20   argument is that it's preferable, it would be better for

21   this person or it would be better for the defendant or

22   for the baby.  Nothing about that is necessary.

23        There has been no showing whatsoever, not even an

24   allegation, that the marshal's service and the Linn

25   County Jail is incapable of tending to the needs of a

Case 2:21-cr-01009-CJW-MAR   Document 52   Filed 03/16/22   Page 19 of 34
Reported by Shelly Semmler, RMR, RDR

1  pregnant woman.  It's -- there's nothing whatsoever.  The

2  defendant comes basically saying, well, they have this

3  procedure, and I don't like it, I would like more, I

4  would like something that would be preferable to me.

5  That is -- falls far short of the showing that she would

6  be required to make either under 3142(i) or for a

7  reconsideration under 3142(f) because, frankly, it's just

8  not necessary.  The defendant may like it.  It may be

9  better for her mentally.  But it's not authorized under

10  the statute, and it's certainly not necessary under the

11  circumstances of this case.

12      And counsel's belief about the defendant and her

13  willingness and all of this notwithstanding, the Court

14  absolutely can take into consideration and should take

15  into consideration her past behavior, her past actions in

16  determining whether under 3142(g) this defendant is --

17  would be someone who, subject to conditions of release,

18  whether they would be a risk to the public, a danger to

19  the public, or a risk of nonappearance.

20      This defendant has had numerous failures to appear.

21  This defendant in this investigation, as was the subject

22  of prior testimony and as alluded to by counsel,

23  essentially swindled a confidential informant who tried

24  to buy drugs from her, took the money and ran.  She's not

25  someone whose word can be trusted based on her prior

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*Appearances report — official transcript*
Case 2:21-cr-01009-CJW-MAR   Document 52   Filed 03/16/22   Page 20 of 34

1　actions.  And there's really nothing that has changed

2　other than the fact that she sat in jail for six months

3　or so that would indicate that.

4　　　　She hasn't -- as the Court noted, she hasn't

5　received any drug treatment while in jail.  There's --

6　there's just not any reason to believe that the defendant

7　wouldn't be subject -- her pregnancy notwithstanding,

8　that she either before or afterwards might make a

9　terrible decision.

10　　　　And, frankly, based on her record and her record of

11　failing to comply with other courts' orders in various

12　circumstances, she's just not a good bet to have --

13　excuse me, to believe that she would comply with any

14　order or any condition that this Court would impose or

15　any well-meaning condition that her stepfather and his

16　wife would attempt to impose on her.

17　　　　So based on all this, Your Honor, we believe that

18　the defendant has failed to meet his burden under any of

19　the statutes that have been cited here today, and we

20　believe that the defendant's motion should be denied.

21　　　　　　THE COURT:  Thank you, Mr. Chatham.

22　　　　With respect to the appropriate code section, I

23　appreciate the government's citation to the other

24　statutes.  18 U.S.C. section 3142(f) I believe gives me

25　the authority to consider this matter.  It does say it

Case 2:21-cr-01009-CJW-MAR   Document 52   Filed 03/16/22   Page 21 of 34

1  can -- detention hearing may be reopened before or after

2  determination by the judicial officer at any time before

3  trial -- so far that all applies -- if the judicial

4  officer finds that information exists that was not known

5  to the movant at the time of the hearing -- in this case

6  that would be both her pregnancy and the possibility of

7  having a third-party custodian during such release -- and

8  it does have a material bearing on the issue of whether

9  there are conditions of release that will reasonably

10  assure the appearance of such a person as required and

11  the safety of other persons and the community.

12      And then I was also looking at 3142(i) this morning

13  for another case, and it's something that comes up

14  occasionally with respect to release of defendants for

15  such things as a funeral of a mother in this case,

16  whether that presents a compelling reason for the

17  release.

18      So I'll attempt to consider both those statutes,

19  whether there's a compelling reason and also under the

20  3142(f), and I think the thing for me to do is consider

21  it as I would at the initial hearing and consider the

22  3142(g) factors.

23      And I will tell you, Ms. Nelson, that I don't

24  remember a case that has had me sort of teeter --

25  teetering on the edge of what my decision should be.

1  There's a lot of -- there's a lot going on here.

2      As we've probably talked about at the last hearing,

3  this is what's called a rebuttable presumption case.  And

4  the statute says that I'm supposed to presume that you

5  would be detained because of the nature of your crime,

6  and that me -- in this case it's a crime that's a drug

7  offense punishable by more than -- ten years or more, and

8  in this case it's my understanding you're facing

9  potentially significantly more time.

10     If you have rebutted the presumption, that's when

11 I'm supposed to consider all the factors in this case --

12 and I do want to consider those -- the nature and

13 circumstances of the offense charged including whether

14 the crime involved violence or a firearm.  It didn't

15 involve a firearm, but it did involve serious bodily

16 injury to someone.  So that factor I believe weighs

17 against you, as does the weight of the evidence as I

18 recall from the prior hearing.

19     Turning to your history and characteristics, I'm

20 very grateful that Miss Cheryl Nelson was here today to

21 speak on your behalf, and I think it's really laudable of

22 her and her husband to bring you into their home and

23 attempt to help you out.  That's gotta provide you a lot

24 of comfort knowing that family behind you.  You don't

25 have family ties or other ties to Manson, Iowa, although

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*Appearance reported by Shelly Semmler transcript*

Case 2:21-cr-01009-CJW-MAR   Document 58   Filed 03/16/22   Page 23 of 34

 1    you do have ties to Iowa.  I think it's probably in your

 2    favor that you would be going to Manson as opposed to

 3    Bellevue or the Dubuque area where you might have had

 4    other contacts to supply yourself with drugs again.

 5        I have to consider your past conduct including your

 6    criminal history and your drug and alcohol abuse.  I

 7    guess I appreciate that you've been off drugs since

 8    you've been incarcerated, and even if I accept you at

 9    your word that you didn't use drugs in your prior

10    pregnancy, you haven't had treatment.  And in my heart of

11    hearts I would like to believe that you, like any other

12    mother, wouldn't want to use drugs while you're pregnant

13    because that could cause some damage to your child.

14        But in this circumstance, unfortunately, you haven't

15    had treatment.  And in this circumstance your resolve to

16    stay off drugs has not been tested, and in my experience

17    in prior cases that people on their release or facing

18    going back into prison for a significant sentence if they

19    do have particularly a heroin abuse problem, sometimes

20    the temptation to use the drug is no better than anybody

21    else in this courtroom.  Can be sort of overwhelming.

22        It might be that you're able to resist that

23    temptation under the circumstances of living with your

24    family in Manson, at least prior to the birth of your

25    child.  I guess I'm somewhat concerned about whether that

Case 2:21-cr-01009-CJW-MAR   Document 58   Filed 03/16/22   Page 24 of 34

Reporter's Official Transcript

resolve would disappear once your child was born and you
know you're facing prison in a couple weeks.

In your case you haven't had success while you've
been on release, and the circumstances of your arrest in
this case resulting in the theft of the money as well as
sort of injecting heroin as the law enforcement was
coming for arrest, that really troubles me about, despite
your best intentions, how well you would comply with the
terms of any release that I might impose.

In terms of the nature and seriousness of the danger
posed by you if you're released, you know, I don't think
you're a violent person, Ms. Nelson. That's -- that's
not my concern. And as I said, I would like to believe
that you would have your child's best interest at heart
rather than perhaps a desire to abuse heroin.

But I do need to consider the possibility that based
on your track record that you would present a danger to
your -- to your child. Again, I'm not saying that to
make you feel bad as a mother. I'm not saying that
because I don't think you'd do your best. It's just an
obvious concern that I should have as a judge in this
case.

Turning to the proposed conditions of release, maybe
it's obvious to people who are in the -- experts in
parenting. I'm a parent, but I don't really know the

```
 1    substantive difference that it would make for your child
 2    to have 14 days with you instead of 3 days.  Maybe
 3    there's something in that period that should be obvious
 4    to me that that's going to make a huge difference for
 5    your child.  But that's not evident to me on this record,
 6    and that's the time period where I fear you might be most
 7    likely to again use heroin.
 8         As I said, under the -- 3142(i), the release can be
 9    permitted if it's necessary and if there's a compelling
10    reason.  I guess in a way it's hard not to say that the
11    birth of a child might be as compelling under certain
12    circumstances as going to someone's funeral.  I guess it
13    could be argued that it's more compelling.
14         On the other hand, the government does provide for
15    necessary medical services for someone even in pregnancy.
16    And I don't think it's the argument from the defense that
17    the defendant wouldn't receive adequate medical care,
18    that her child wouldn't receive adequate medical care for
19    the delivery of the child while in the custody of the
20    jail.
21         In light of all that, I am going to order that the
22    defendant remain detained because there's no reason to
23    change my decision previously that the government has
24    carried its burden of showing by a preponderance of the
25    evidence that the defendant poses a danger to the
```

```
 1   community and a risk of nonappearance.
 2        Despite the offers from the Nelson family to take
 3   Emily into their care, I conclude there is no condition
 4   or combination of conditions I could impose with which
 5   the defendant would comply and appear as required at
 6   trial and hearings in this matter and that would ensure
 7   the safety of the community.
 8        So the defendant will remain detained in the custody
 9   of the attorney general of the United States until trial
10   in this matter.
11        Ms. Nelson, this may be a decision that I'm wrong
12   about.  And you can talk about that with Mr. Meyer, and
13   you have 14 days from today to file such an appeal.  Do
14   you understand your right to appeal my decision?
15             THE DEFENDANT:  Yes, Your Honor.
16             THE COURT:  It's likely, Mr. Chatham, that
17   either I or Judge Williams if they do appeal this
18   decision because of the sort of time frames here, we may
19   accelerate the time frame for resisting so that we can
20   get the decision more quickly.
21        Is there anything else on behalf of the defendant,
22   Mr. Meyer?
23             MR. MEYER:  No, Your Honor.
24             THE COURT:  Anything further on behalf of the
25   government?
```

```
 1            MR. CHATHAM:  No, Your Honor.

 2            THE COURT:  Thank you all.  That will conclude

 3   our hearing.

 4            (The foregoing hearing was

 5            concluded at 10:39 a.m.)

 6                    *  *  *  *

 7    (This concludes the transcript of the audio recording.)

 8

 9

10                    CERTIFICATE

11       I certify that the foregoing is a correct

12   transcript to the best of my ability from the digital

13   recording of proceedings in the above-entitled matter.

14       S/Shelly Semmler                  3-8-22
         Shelly Semmler, RDR, CRR            Date
15
```

16                    **INDEX**

17   **WITNESS:**                                    **PAGE:**

18       CHERYL NELSON
             DIRECT EXAMINATION                    6
19           BY MR. MEYER
             CROSS-EXAMINATION                     9
20           BY MR. CHATHAM
             REDIRECT EXAMINATION                 11
21           BY MR. MEYER

```
22                    *  *  *  *  *

23

24

25
```

Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com
Reproduction prohibited without transcriber
Case 2:21-cr-01009-CJW-MAR   Document 52   Filed 03/16/22   Page 28 of 34

## 1

**10:39** [1] - 28:5
**11** [3] - 8:5, 8:19, 28:20
**111** [2] - 1:10, 1:14
**13** [1] - 8:5
**13-year-olds** [1] - 8:19
**14** [3] - 17:11, 26:2, 27:13
**15** [1] - 15:11
**16** [1] - 1:11
**18** [3] - 2:11, 2:16, 21:24

## 2

**2** [1] - 8:4
**20** [2] - 12:2, 15:11
**2021** [1] - 1:11
**21-CR-1009** [1] - 2:6
**233-3846** [1] - 1:21
**25** [1] - 12:2
**28** [1] - 12:21

## 3

**3** [1] - 26:2
**3-8-22** [1] - 28:14
**3142** [1] - 3:2
**3142(c)(3)** [1] - 2:11
**3142(f** [8] - 2:16, 2:25, 3:2, 18:15, 18:20, 20:7, 21:24, 22:20
**3142(g** [3] - 18:8, 20:16, 22:22
**3142(i** [5] - 19:1, 19:15, 20:6, 22:12, 26:8
**320** [1] - 1:20

## 4

**425** [2] - 1:17, 1:17

## 5

**51101** [1] - 1:21
**52401** [2] - 1:15, 1:18

## 6

**6** [1] - 28:18

## 7

**712** [1] - 1:21

## 9

**9** [1] - 28:19
**9:58** [1] - 1:11

## A

**a.m** [2] - 1:11, 28:5
**ability** [1] - 28:12
**able** [2] - 8:16, 24:22
**above-entitled** [1] - 28:13
**absolutely** [1] - 20:14
**abuse** [4] - 14:10, 24:6, 24:19, 25:15
**accelerate** [1] - 27:19
**accept** [1] - 24:8
**access** [3] - 3:5, 7:23, 7:24
**according** [1] - 9:4
**act** [1] - 11:10
**actions** [2] - 20:15, 21:1
**active** [1] - 10:15
**addict** [2] - 16:24, 16:25
**adequate** [2] - 26:17, 26:18
**adjust** [1] - 6:4
**adopted** [1] - 12:17
**afforded** [1] - 14:11
**afterwards** [1] - 21:8
**ago** [2] - 9:18, 15:11
**ahold** [1] - 8:25
**alcohol** [1] - 24:6
**allegation** [1] - 19:24
**allow** [1] - 18:9
**allowed** [2] - 7:23, 15:21
**allowing** [1] - 16:23
**alluded** [1] - 20:22
**alone** [1] - 7:23
**Alta** [1] - 10:1
**altered** [1] - 17:8
**amended** [1] - 2:10
**AMENDED** [1] - 1:5
**AMERICA** [1] - 1:3
**Ann** [2] - 2:5, 12:14
**ANN** [1] - 1:6
**answer** [1] - 10:17
**anyway** [2] - 13:11, 16:4
**appeal** [3] - 27:13, 27:14, 27:17
**appear** [3] - 16:10, 20:20, 27:5
**appearance** [2] - 5:2, 22:10
**APPEARANCES** [1] - 1:12
**applies** [1] - 22:3
**apply** [1] - 18:13
**appreciate** [1] - 14:4, 14:14, 21:23, 24:7
**appropriate** [6] - 5:15, 18:8, 18:25, 19:5, 19:10, 21:22
**area** [2] - 7:8, 24:3
**arguably** [1] - 15:12
**argued** [1] - 26:13
**argument** [4] - 2:12, 17:24, 19:20, 26:16
**arguments** [1] - 15:3
**arrangements** [1] - 11:12

**arrest** [3] - 8:1, 25:4, 25:7
**assistance** [1] - 13:7
**Assistant** [2] - 1:14, 2:7
**assure** [1] - 22:10
**attempt** [4] - 18:9, 21:16, 22:18, 23:23
**attempting** [1] - 18:5
**Attorney** [2] - 1:14, 2:7
**attorney** [2] - 2:8, 27:9
**audio** [2] - 2:1, 28:7
**authority** [1] - 21:25
**authorized** [1] - 20:9
**avenue** [1] - 19:10
**Avenue** [2] - 1:10, 1:14
**awaiting** [1] - 15:7
**aware** [2] - 10:6, 12:11

## B

**baby** [2] - 7:15, 19:22
**bad** [1] - 25:19
**based** [6] - 6:21, 20:25, 21:10, 21:17, 25:16
**basis** [1] - 16:23
**bearing** [1] - 22:8
**become** [1] - 11:9
**beforehand** [1] - 16:7
**behalf** [5] - 4:20, 5:4, 23:21, 27:21, 27:24
**behavior** [1] - 20:15
**behind** [1] - 23:24
**belief** [1] - 20:12
**Bellevue** [1] - 24:3
**benefits** [1] - 16:5
**best** [4] - 25:8, 25:14, 25:20, 28:12
**bet** [1] - 21:12
**better** [5] - 15:20, 19:20, 19:21, 20:9, 24:20
**bingo** [1] - 17:6
**biologically** [1] - 12:16
**birth** [14] - 11:16, 13:2, 13:14, 15:7, 15:14, 15:24, 15:25, 16:17, 17:4, 17:10, 17:16, 24:24, 26:11
**bit** [1] - 8:17
**blank** [1] - 4:11
**bodily** [1] - 23:15
**bond** [2] - 15:22, 17:13
**boom** [1] - 15:25
**born** [3] - 11:10, 16:6, 25:1
**brief** [2] - 17:23, 18:11
**bring** [1] - 23:22
**brother** [1] - 11:13
**Buena** [1] - 10:23
**burden** [2] - 21:18, 26:24
**buy** [1] - 20:24
**BY** [6] - 6:8, 9:13, 11:8, 28:19, 28:20, 28:21

## C

**c)(3** [1] - 2:22
**c)(f** [1] - 2:22
**capability** [1] - 18:7
**capable** [1] - 6:25
**care** [7] - 7:18, 10:12, 14:21, 16:8, 26:17, 26:18, 27:3
**carried** [1] - 26:24
**case** [14] - 3:7, 15:11, 20:11, 22:5, 22:13, 22:15, 22:24, 23:3, 23:6, 23:8, 23:11, 25:3, 25:5, 25:22
**cases** [1] - 24:17
**Cedar** [3] - 1:10, 1:15, 1:18, 14:17
**Center** [2] - 7:2, 10:24
**certain** [1] - 26:11
**certainly** [5] - 3:8, 5:3, 5:10, 15:20, 20:10
**CERTIFICATE** [1] - 28:10
**certify** [1] - 28:11
**change** [1] - 26:23
**changed** [2] - 17:3, 21:1
**characteristics** [1] - 23:19
**charge** [1] - 7:6
**charged** [1] - 23:13
**charges** [2] - 10:5, 15:7
**CHATHAM** [14] - 1:13, 3:1, 4:15, 5:7, 9:11, 9:13, 11:3, 11:23, 13:25, 14:2, 15:1, 17:22, 28:1, 28:20
**Chatham** [14] - 2:7, 2:24, 3:15, 4:14, 5:6, 9:10, 11:4, 11:22, 13:24, 14:1, 14:24, 17:21, 21:21, 27:16
**CHERYL** [2] - 6:1, 28:18
**Cheryl** [3] - 6:10, 6:11, 23:20
**child** [21] - 11:10, 13:3, 15:20, 15:21, 16:1, 16:3, 16:5, 16:6, 16:20, 17:10, 17:14, 24:13, 24:25, 25:1, 25:18, 26:1, 26:5, 26:11, 26:18, 26:19
**child's** [1] - 25:14
**children** [5] - 7:11, 8:5, 10:7, 10:10, 10:12
**circumstance** [3] - 18:13, 24:14, 24:15
**circumstances** [8] - 17:3, 17:8, 20:11, 21:12, 23:13, 24:23, 25:4, 26:12
**citation** [4] - 18:12, 18:25, 21:23
**cited** [1] - 21:19
**City** [1] - 1:21
**claiming** [1] - 19:17
**cleaned** [1] - 10:25

**close** [1] - 7:25
**code** [2] - 3:18, 21:22
**Code** [2] - 2:11, 2:15
**combination** [2] - 14:21, 27:4
**comfort** [1] - 23:24
**coming** [2] - 14:4, 25:7
**commencing** [1] - 1:11
**committed** [1] - 16:25
**community** [4] - 15:13, 22:11, 27:1, 27:7
**compelling** [7] - 19:9, 19:18, 22:16, 22:19, 26:9, 26:11, 26:13
**complicated** [1] - 12:18
**comply** [4] - 21:11, 21:13, 25:8, 27:5
**conceive** [1] - 16:16
**concern** [3] - 12:13, 25:13, 25:21
**concerned** [1] - 24:25
**conclude** [2] - 27:3, 28:2
**concluded** [1] - 28:5
**concludes** [1] - 28:7
**condition** [5] - 16:12, 17:9, 21:14, 21:15, 27:3
**conditions** [15] - 2:10, 7:17, 7:20, 7:22, 8:14, 9:5, 13:14, 16:13, 17:19, 18:19, 18:22, 20:17, 22:9, 25:23, 27:4
**CONDITIONS** [1] - 1:5
**conduct** [1] - 24:5
**confidential** [1] - 20:23
**confirming** [1] - 14:14
**connection** [1] - 7:14
**consider** [15] - 3:16, 4:7, 4:9, 4:17, 5:12, 5:17, 19:11, 21:25, 22:18, 22:20, 22:21, 23:11, 23:12, 24:5, 25:16
**considerable** [1] - 13:2
**consideration** [3] - 4:12, 20:14, 20:15
**considered** [1] - 4:5
**considering** [1] - 19:14
**contact** [1] - 8:5
**contacts** [1] - 24:4
**contemplates** [3] - 18:15, 18:16, 18:21
**contends** [1] - 2:13
**contents** [1] - 19:1
**Cooperative** [1] - 6:19
**correct** [7] - 10:10, 10:13, 10:20, 11:1, 12:15, 12:25, 28:11
**counsel** [1] - 20:22
**counsel's** [2] - 19:19, 20:12
**counselling** [1] - 14:21
**County** [1] - 19:25
**couple** [1] - 25:2

**COURT** [38] - 1:1, 2:4, 2:24, 3:15, 4:6, 4:12, 4:16, 5:5, 5:16, 5:22, 6:2, 9:9, 11:4, 11:21, 11:24, 12:3, 12:6, 12:9, 12:12, 12:17, 12:20, 13:1, 13:5, 13:10, 13:18, 13:23, 14:1, 14:3, 14:7, 14:13, 14:23, 15:2, 15:9, 17:20, 21:21, 27:16, 27:24, 28:2
**Court** [24] - 1:10, 2:5, 2:17, 2:20, 3:5, 3:7, 3:9, 3:10, 3:11, 3:25, 5:12, 5:13, 9:5, 15:18, 16:11, 16:14, 16:18, 17:9, 18:13, 19:13, 19:15, 20:13, 21:4, 21:14
**Courthouse** [1] - 1:10
**courtroom** [1] - 24:21
**courts'** [1] - 21:11
**CR21-1009-CJW** [1] - 1:3
**crime** [3] - 23:5, 23:6, 23:14
**criminal** [2] - 10:5, 24:6
**cross** [1] - 5:11
**CROSS** [2] - 9:12, 28:19
**cross-examination** [1] - 5:11
**CROSS-EXAMINATION** [2] - 9:12, 28:19
**CRR** [2] - 1:20, 28:14
**custodian** [1] - 22:7
**custody** [8] - 7:13, 10:7, 10:9, 13:12, 18:9, 19:4, 26:19, 27:8

## D

**damage** [1] - 24:13
**DAN** [1] - 1:13
**Dan** [1] - 2:7
**danger** [4] - 20:18, 25:10, 25:17, 26:25
**Date** [1] - 28:14
**daughter** [1] - 12:14
**days** [9] - 8:21, 15:22, 15:25, 17:11, 17:12, 17:15, 26:2, 27:13
**decision** [7] - 21:9, 22:25, 26:23, 27:11, 27:14, 27:18, 27:20
**defendant** [28] - 2:8, 2:13, 3:3, 3:13, 5:8, 9:14, 10:2, 10:15, 18:3, 18:6, 18:9, 18:12, 18:16, 19:21, 20:2, 20:8, 20:12, 20:16, 20:20, 20:21, 21:6, 21:18, 26:17, 26:22, 26:25, 27:5, 27:8, 27:21
**DEFENDANT** [1] - 27:15
**Defendant** [2] - 1:7, 1:16
**defendant's** [2] - 2:10,

19:17, 21:20
**DEFENDANT'S** [1] - 6:1
**defendants** [1] - 22:14
**defense** [4] - 7:12, 19:8, 19:17, 26:16
**delivery** [3] - 7:14, 9:1, 26:19
**demanding** [1] - 8:16
**denied** [1] - 21:20
**desire** [2] - 18:2, 25:15
**despite** [2] - 25:7, 27:2
**detail** [1] - 4:17
**detained** [4] - 18:18, 23:5, 26:22, 27:8
**detainees** [1] - 14:12
**detention** [8] - 2:17, 2:18, 3:9, 3:14, 4:2, 18:17, 19:2, 22:1
**determination** [1] - 22:2
**determines** [2] - 19:6, 19:7
**determining** [1] - 20:16
**difference** [2] - 26:1, 26:4
**different** [1] - 17:7
**digital** [2] - 1:20, 28:12
**DIRECT** [2] - 6:7, 28:18
**directly** [1] - 19:12
**director** [1] - 7:5
**disappear** [1] - 25:1
**discussed** [6] - 7:17, 7:20, 8:4, 8:12, 8:14, 8:25
**disregard** [1] - 16:18
**disregarding** [1] - 8:6
**DISTRICT** [2] - 1:1, 1:1
**District** [2] - 1:9, 1:10
**DIVISION** [1] - 1:2
**doctor** [1] - 16:7
**Dodge** [8] - 6:21, 6:22, 7:3, 7:7, 12:1, 12:10, 16:8
**down** [2] - 14:4, 18:18
**drive** [1] - 6:22
**drug** [8] - 10:16, 14:18, 14:21, 17:1, 21:5, 23:6, 24:6, 24:20
**drug-related** [1] - 17:1
**drugs** [9] - 4:25, 5:4, 14:19, 20:24, 24:4, 24:7, 24:9, 24:12, 24:16
**Dubuque** [2] - 11:1, 24:3
**DUBUQUE** [1] - 1:2
**during** [4] - 10:4, 10:15, 10:19, 22:7

## E

**EASTERN** [1] - 1:2
**edge** [1] - 22:25
**eight** [2] - 6:24, 8:10
**either** [7] - 2:22, 18:18, 19:16, 20:6, 21:8, 27:17
**eligible** [3] - 12:22, 13:7,

14:22
**emergencies** [1] - 8:13
**Emily** [14] - 2:5, 3:25, 7:12, 7:17, 7:21, 9:4, 12:13, 13:5, 13:22, 15:13, 16:5, 16:16, 16:23, 27:3
**EMILY** [1] - 1:6
**Emily's** [1] - 8:23
**employed** [4] - 6:15, 10:19, 10:22, 10:23
**encapsulates** [1] - 17:23
**end** [1] - 19:2
**enforced** [1] - 8:3
**enforcement** [1] - 25:6
**ensure** [1] - 27:6
**entitled** [1] - 28:13
**ESQ** [2] - 1:13, 1:16
**essentially** [2] - 11:15, 20:23
**established** [1] - 19:19
**eventually** [1] - 11:1
**evidence** [5] - 5:17, 5:19, 14:24, 23:17, 26:25
**evident** [1] - 26:5
**EXAMINATION** [6] - 6:7, 9:12, 11:7, 28:18, 28:19, 28:20
**examination** [1] - 5:11
**excuse** [4] - 3:2, 18:14, 19:7, 21:13
**exists** [1] - 22:4
**expense** [1] - 13:2
**experience** [1] - 24:16
**experts** [1] - 25:24
**extent** [1] - 19:6

## F

**facilities** [2] - 7:5, 7:6
**facing** [3] - 23:8, 24:17, 25:2
**fact** [2] - 3:3, 21:2
**factor** [1] - 23:16
**factors** [5] - 3:6, 3:12, 18:9, 22:22, 23:11
**facts** [1] - 3:7
**failed** [1] - 21:18
**failing** [1] - 21:11
**failures** [1] - 20:20
**falls** [1] - 20:5
**family** [10] - 8:13, 8:22, 17:10, 18:5, 23:24, 23:25, 24:24, 27:2
**far** [4] - 10:14, 12:1, 20:5, 22:3
**father** [2] - 7:24, 12:19
**father's** [1] - 10:13
**favor** [1] - 24:2
**favorable** [1] - 4:3
**fear** [1] - 26:6

*Contact Shelly Semmler at 712-233-3841 or ssemmlerreporting@gmail.com*
*for a complete copy of this transcript*
Case 2:21-cr-01009-CJW-MAR   Document 56   Filed 03/16/22   Page 30 of 34

**Federal** [1] - 1:10
**few** [1] - 17:25
**figure** [1] - 13:6
**file** [1] - 27:13
**firearm** [2] - 23:14, 23:15
**first** [4] - 10:23, 16:24, 18:11, 19:11
**five** [1] - 8:10
**floor** [1] - 5:24
**Florida** [1] - 10:8
**following** [1] - 2:1
**FOR** [2] - 1:1, 1:5
**foregoing** [2] - 28:4, 28:11
**form** [1] - 3:5
**formally** [1] - 4:17
**Fort** [8] - 6:21, 6:22, 7:3, 7:7, 12:1, 12:10, 16:8
**forth** [1] - 4:4
**forty** [1] - 18:14
**forward** [1] - 5:23
**frame** [1] - 27:19
**frames** [1] - 27:18
**framework** [1] - 19:13
**frankly** [3] - 18:24, 20:7, 21:10
**friends** [1] - 12:9
**full** [1] - 4:22
**funeral** [2] - 22:15, 26:12

**G**

**general** [1] - 27:9
**girlfriend** [1] - 11:13
**given** [4] - 5:15, 16:4, 16:22, 17:8
**gotta** [1] - 23:23
**government** [6] - 2:13, 2:15, 13:13, 26:14, 26:23, 27:25
**government's** [4] - 2:12, 5:18, 18:24, 21:23
**grain** [1] - 5:14
**grateful** [1] - 23:20
**grounds** [1] - 4:4
**guardian** [1] - 11:9
**guardianship** [1] - 11:14
**guess** [11] - 3:3, 3:16, 5:12, 12:20, 15:22, 16:11, 16:22, 24:7, 24:25, 26:10, 26:12

**H**

**hampering** [1] - 3:12
**hand** [2] - 5:25, 26:14
**hard** [2] - 17:17, 26:10
**hat** [1] - 17:12
**health** [2] - 12:23
**hear** [1] - 6:4
**heard** [1] - 15:5
**HEARING** [1] - 1:4

**hearing** [17] - 2:9, 2:17, 2:18, 3:4, 3:14, 4:2, 4:9, 4:13, 4:18, 18:18, 22:1, 22:5, 22:21, 23:2, 23:18, 28:3, 28:4
**Hearing** [1] - 1:9
**hearings** [1] - 27:6
**Heart** [2] - 14:16, 14:20
**heart** [2] - 24:10, 25:14
**hearts** [1] - 24:11
**held** [1] - 1:9
**help** [2] - 10:8, 23:23
**heroin** [9] - 4:23, 5:3, 5:10, 16:24, 16:25, 24:19, 25:6, 25:15, 26:7
**herself** [1] - 5:11
**Hinz** [1] - 1:19
**history** [2] - 23:19, 24:6
**home** [10] - 6:16, 6:22, 6:25, 8:9, 8:15, 8:17, 8:21, 9:19, 23:22
**homes** [1] - 10:25
**honestly** [1] - 10:17
**Honor** [18] - 3:1, 3:21, 4:15, 5:7, 5:21, 9:8, 9:11, 11:20, 13:25, 14:2, 14:6, 15:1, 15:23, 17:22, 21:17, 27:15, 27:23, 28:1
**Honorable** [1] - 1:9
**hospital** [3] - 8:24, 9:2, 15:25
**house** [6] - 6:24, 7:22, 8:1, 8:6, 16:11, 18:4
**housekeeper** [1] - 10:24
**huge** [1] - 26:4
**husband** [4] - 8:4, 8:15, 8:24, 23:22

**I**

**IA** [3] - 1:15, 1:18, 1:21
**idea** [2] - 13:15, 13:17
**immediate** [1] - 8:23
**important** [1] - 16:20
**impose** [7] - 9:5, 16:12, 17:9, 21:14, 21:16, 25:9, 27:4
**imposed** [1] - 16:18
**IN** [1] - 1:1
**incapable** [1] - 19:25
**incarcerated** [1] - 24:8
**inclined** [1] - 3:9
**including** [3] - 13:14, 23:13, 24:5
**incur** [1] - 10:4
**INDEX** [1] - 28:16
**indicate** [1] - 21:3
**indicated** [1] - 4:20
**informant** [1] - 20:23
**information** [2] - 15:5, 22:4

**initial** [2] - 5:2, 22:21
**injecting** [1] - 25:6
**injury** [1] - 23:16
**inquiry** [1] - 13:6
**instead** [1] - 26:2
**instincts** [1] - 16:19
**insurance** [1] - 12:23
**intentions** [1] - 25:8
**interest** [1] - 25:14
**internet** [1] - 7:23
**investigation** [1] - 20:21
**involve** [1] - 23:15
**involved** [1] - 23:14
**IOWA** [1] - 1:1
**Iowa** [9] - 1:10, 1:11, 6:12, 10:1, 14:17, 14:20, 16:17, 23:25, 24:1
**issue** [4] - 2:18, 3:8, 3:10, 22:8
**it'd** [1] - 17:15

**J**

**Jail** [1] - 19:25
**jail** [8] - 9:4, 14:10, 15:7, 15:24, 16:1, 21:2, 21:5, 26:20
**job** [4] - 7:4, 7:5, 8:11, 18:24
**job's** [1] - 8:15
**judge** [2] - 4:4, 25:21
**Judge** [4] - 1:9, 15:4, 17:18, 27:17
**judicial** [4] - 19:3, 19:6, 22:2, 22:3
**July** [1] - 12:5
**June** [1] - 1:11

**K**

**keep** [1] - 18:3
**kind** [1] - 16:14
**kinnamon** [1] - 1:16
**Kinnamon** [1] - 1:16
**knowing** [1] - 23:24
**known** [1] - 22:4
**Kristin** [1] - 1:19

**L**

**lady** [1] - 10:25
**last** [3] - 5:2, 15:10, 23:2
**laudable** [1] - 23:21
**law** [1] - 25:6
**lawyers** [1] - 13:20
**least** [3] - 7:13, 17:2, 24:24
**leave** [1] - 7:22, 8:17
**leaving** [1] - 16:11
**left** [2] - 9:19, 15:22
**lenient** [1] - 8:11

**less** [1] - 3:10
**lieu** [2] - 4:1, 4:7
**light** [1] - 26:21
**likely** [2] - 26:7, 27:16
**lined** [1] - 16:8
**Linn** [1] - 19:24
**live** [4] - 6:11, 6:12, 10:2, 11:16
**lived** [6] - 7:8, 9:14, 9:20, 9:21, 9:23, 12:4
**lives** [1] - 7:10
**living** [4] - 9:25, 10:1, 10:16, 24:23
**look** [4] - 3:11, 14:20, 18:14, 19:12
**looked** [1] - 8:22
**looking** [5] - 11:24, 15:19, 18:23, 18:25, 22:12
**looks** [1] - 11:25

**M**

**ma'am** [1] - 5:22
**Magistrate** [1] - 1:9
**Manson** [12] - 6:12, 7:8, 9:21, 9:23, 11:25, 12:10, 16:8, 16:17, 17:10, 23:25, 24:2, 24:24
**marijuana** [2] - 4:24
**Mark** [2] - 1:9, 2:8
**MARK** [1] - 1:16
**married** [1] - 6:13
**marshal** [1] - 19:5
**marshal's** [1] - 19:24
**marshals** [1] - 13:12
**material** [1] - 22:8
**maternal** [1] - 16:19
**matter** [7] - 2:4, 2:9, 18:10, 21:25, 27:6, 27:10, 28:13
**mean** [5] - 5:8, 8:3, 16:4, 17:16, 18:7
**meaning** [1] - 21:15
**means** [1] - 16:2
**Medical** [2] - 7:2, 10:24
**medical** [5] - 8:23, 13:13, 26:15, 26:17, 26:18
**meet** [1] - 21:18
**meeting** [1] - 8:22
**member** [1] - 18:5
**mentally** [1] - 20:9
**mentioned** [1] - 18:11
**MEYER** [20] - 1:16, 2:21, 3:21, 4:10, 4:19, 5:21, 6:8, 9:7, 11:6, 11:8, 11:20, 13:22, 14:6, 14:11, 14:15, 15:4, 15:10, 27:23, 28:19, 28:21
**Meyer** [17] - 1:16, 2:9, 2:19, 3:19, 4:18, 5:20, 6:6, 9:9, 11:5, 11:21, 13:21, 14:5, 14:23, 15:3, 17:20, 27:12,

27:22
**microphone** [2] - 6:4, 6:5
**middle** [1] - 5:23
**might** [6] - 21:8, 24:3, 24:22, 25:9, 26:6, 26:11
**miles** [1] - 6:24
**mill** [2] - 6:24, 6:25
**mine** [1] - 8:16
**minimal** [2] - 16:8, 16:9
**minimum** [1] - 5:13
**minor** [1] - 7:11
**minutes** [2] - 12:2
**Miss** [4] - 4:3, 4:20, 5:4, 23:20
**modify** [1] - 17:19
**money** [2] - 20:24, 25:5
**months** [3] - 5:1, 10:3, 21:2
**morning** [5] - 5:20, 14:4, 18:23, 19:1, 22:12
**most** [4] - 8:21, 16:20, 19:10, 26:6
**mother** [5] - 15:21, 16:3, 22:15, 24:12, 25:19
**MOTION** [1] - 1:5
**motion** [4] - 2:10, 3:19, 15:23, 21:20
**movant** [1] - 22:5
**moved** [1] - 11:1
**MR** [32] - 2:21, 3:1, 3:21, 4:10, 4:15, 4:19, 5:7, 5:21, 6:8, 9:7, 9:11, 9:13, 11:3, 11:6, 11:8, 11:20, 11:23, 13:22, 13:25, 14:2, 14:6, 14:11, 14:15, 15:1, 15:4, 15:10, 17:22, 27:23, 28:1, 28:19, 28:20, 28:21

## N

**name** [1] - 6:9
**narrow** [1] - 18:3
**nature** [4] - 5:15, 23:5, 23:12, 25:10
**near** [2] - 6:11, 12:10
**necessary** [9] - 17:13, 19:8, 19:16, 19:19, 19:22, 20:8, 20:10, 26:9, 26:15
**need** [2] - 6:5, 25:16
**needs** [2] - 8:23, 19:25
**NELSON** [3] - 1:6, 6:1, 28:18
**Nelson** [21] - 2:6, 4:3, 4:20, 5:4, 6:10, 6:14, 7:13, 9:14, 11:24, 12:6, 12:14, 14:3, 14:9, 16:13, 16:16, 18:6, 22:23, 23:20, 25:12, 27:2, 27:11
**Nelson's** [2] - 18:1, 18:2
**NEW** [1] - 6:19
**nonappearance** [2] - 20:19,

27:1
**nonetheless** [1] - 17:14
**NORTHERN** [1] - 1:1
**Northern** [1] - 1:10
**note** [2] - 2:12, 3:12
**noted** [1] - 21:4
**nothing** [5] - 11:23, 19:18, 19:22, 20:1, 21:1
**notice** [1] - 4:1
**notwithstanding** - 20:13, 21:7
**November** [5] - 5:2, 15:15
**Number** [1] - 2:6
**number** [2] - 4:19, 17:12
**numerous** [1] - 20:20

## O

**OB** [1] - 9:1
**object** [1] - 5:7
**objection** [6] - 2:25, 4:12, 5:5, 5:13, 5:18, 13:23
**obvious** [4] - 16:5, 25:21, 25:24, 26:3
**obviously** [1] - 19:17
**occasionally** [1] - 22:14
**OF** [4] - 1:1, 1:3, 1:4, 1:5
**offense** [2] - 23:7, 23:13
**offenses** [1] - 17:1
**offers** [1] - 27:2
**office** [1] - 6:23
**officer** [4] - 19:3, 19:6, 22:2, 22:4
**often** [1] - 15:6
**ON** [1] - 1:5
**onboard** [3] - 7:15, 8:7, 8:13
**once** [1] - 25:1
**one** [6] - 2:22, 4:19, 5:21, 11:6, 14:15, 18:14
**operating** [1] - 4:10
**opposed** [1] - 24:2
**optimal** [1] - 16:2
**options** [1] - 8:12
**order** [5] - 18:17, 19:2, 19:3, 21:14, 26:21
**ordered** [3] - 3:4, 3:14, 11:18
**orders** [1] - 21:11
**original** [1] - 3:24
**otherwise** [2] - 7:24, 12:19
**outlines** [1] - 3:24
**outside** [1] - 6:15
**overwhelming** [1] - 24:21
**owned** [1] - 7:6

## P

**PAGE** [1] - 28:17
**page** [1] - 3:18

**paid** [1] - 13:16
**parent** [1] - 25:25
**parenting** [1] - 25:25
**parents** [2] - 10:13, 16:19
**part** [2] - 3:23, 8:3
**particular** [3] - 3:13, 19:11, 19:14
**particularly** [1] - 24:19
**party** [1] - 22:7
**past** [6] - 5:9, 5:10, 17:6, 20:15, 24:5
**pay** [2] - 13:2, 13:7
**pending** [2] - 7:14, 18:10
**people** [3] - 8:25, 24:17, 25:24
**perfect** [1] - 14:19
**perhaps** [3] - 2:14, 12:23, 25:15
**period** [4] - 16:6, 17:11, 26:3, 26:6
**permit** [1] - 19:3
**permitted** [1] - 26:9
**person** [7] - 2:8, 16:14, 19:4, 19:5, 19:21, 22:10, 25:12
**person's** [1] - 19:8
**persons** [1] - 22:11
**pertinent** [1] - 3:8
**Phillip** [5] - 6:14, 7:1, 7:2, 8:9, 9:3
**Phillip's** [2] - 7:18, 12:14
**phone** [2] - 7:24, 11:25
**physical** [1] - 17:17
**picked** [1] - 17:11
**place** [3] - 11:16, 16:10, 16:24
**places** [1] - 12:10
**Plaintiff** [2] - 1:4, 1:13
**plan** [1] - 13:15
**point** [3] - 2:16, 3:2, 12:21
**points** [1] - 17:25
**Pomeroy** [1] - 6:23
**posed** [1] - 25:11
**poses** [1] - 26:25
**position** [3] - 2:19, 2:23, 17:23
**possibility** [2] - 22:6, 25:16
**potentially** [1] - 23:9
**preferable** [2] - 19:20, 20:4
**pregnancies** [2] - 4:22, 4:23
**pregnancy** [5] - 7:14, 21:7, 22:6, 24:10, 26:15
**pregnant** [6] - 4:25, 14:17, 15:16, 17:4, 20:1, 24:12
**preparation** [2] - 19:8, 19:16
**prepared** [1] - 2:1
**preponderance** [1] - 26:24

**present** [2] - 1:19, 25:17
**presents** [1] - 22:16
**presume** [1] - 23:4
**presumption** [2] - 23:3, 23:10
**pretrial** [5] - 3:22, 4:1, 4:13, 4:21, 14:12
**pretty** [1] - 17:23
**previous** [1] - 9:19
**previously** [2] - 12:7, 26:23
**prison** [2] - 24:18, 25:2
**Probation** [1] - 1:19
**problem** [2] - 3:1, 24:19
**problems** [1] - 14:18
**procedure** [1] - 20:3
**procedures** [1] - 13:16
**proceed** [5] - 2:20, 2:21, 3:20, 5:22, 15:2
**proceeding** [5] - 2:14, 2:25, 3:2, 3:13, 3:18
**proceedings** [4] - 3:22, 11:14, 18:10, 28:13
**proffer** [10] - 4:20, 5:4, 5:5, 5:8, 5:15, 5:17, 5:19, 13:23, 14:7, 14:24
**proffered** [1] - 15:16
**program** [1] - 14:16
**prompted** [1] - 13:20
**proposal** [1] - 4:7
**propose** [1] - 11:9
**proposed** [3] - 7:12, 17:19, 25:23
**provide** [3] - 13:13, 23:23, 26:14
**provides** [1] - 19:13
**public** [2] - 20:18, 20:19
**punishable** [1] - 23:7
**purposes** [2] - 4:9, 4:17
**pursuant** [1] - 2:11
**put** [1] - 15:23

## Q

**qualify** [1] - 14:20
**questioning** [1] - 12:21
**questions** [4] - 9:7, 11:3, 13:19, 14:1
**quickly** [1] - 27:20
**quite** [1] - 8:17

## R

**raise** [1] - 5:24
**ran** [1] - 20:24
**Rapids** [4] - 1:10, 1:15, 1:18, 14:17
**rather** [1] - 25:15
**RDR** [2] - 1:20, 28:14
**realistically** [1] - 17:5
**really** [6] - 12:21, 17:13,

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*to order a complete copy of this transcript*
Case 2:21-cr-01009-CJW-MAR   Document 56   Filed 03/16/22   Page 32 of 34

21:1, 23:21, 25:7, 25:25
**reason** [7] - 19:9, 19:18, 21:6, 22:16, 22:19, 26:10, 26:22
**reasonably** [1] - 22:9
**reasons** [1] - 3:24
**rebuttable** [1] - 23:3
**rebutted** [1] - 23:10
**receive** [2] - 26:17, 26:18
**received** [1] - 21:5
**receiving** [1] - 14:9
**recommendation** [1] - 3:25
**reconsider** [1] - 2:17
**reconsideration** [2] - 18:17, 20:7
**record** [6] - 3:23, 6:4, 21:10, 25:17, 26:5
**recording** [5] - 1:20, 2:2, 3:6, 28:7, 28:13
**recover** [1] - 17:15
**REDIRECT** [2] - 11:7, 28:20
**Regional** [2] - 7:2, 10:23
**related** [1] - 17:1
**RELEASE** [1] - 1:6
**release** [18] - 2:10, 16:12, 17:19, 18:21, 19:4, 19:7, 19:16, 20:17, 22:7, 22:9, 22:14, 22:17, 24:17, 25:4, 25:9, 25:23, 26:8
**released** [8] - 2:14, 5:1, 7:13, 7:18, 15:14, 16:23, 18:19, 25:11
**releasing** [2] - 3:24, 4:5
**rely** [1] - 15:4
**remain** [2] - 26:22, 27:8
**remember** [1] - 22:24
**reopen** [1] - 2:17
**reopened** [1] - 22:1
**reopening** [1] - 3:8
**report** [4] - 3:23, 4:1, 4:13, 4:21
**represented** [1] - 2:6
**request** [2] - 19:11, 19:14
**requesting** [1] - 18:16
**required** [3] - 20:6, 22:10, 27:5
**residence** [3] - 7:10, 9:15, 10:16
**resist** [1] - 24:22
**resisting** [1] - 27:19
**resolve** [2] - 24:15, 25:1
**respect** [5] - 3:16, 3:22, 14:7, 21:22, 22:14
**result** [1] - 16:25
**resulting** [1] - 25:5
**return** [1] - 11:18
**reviewed** [1] - 4:16
**risk** [6] - 15:13, 16:9, 20:18, 20:19, 27:1

**Roberts** [1] - 1:9
**role** [1] - 11:15
**rules** [2] - 8:7, 16:18
**run** [1] - 15:8
**Russo** [1] - 1:16

## S

**s/Shelly** [1] - 28:14
**safeguards** [1] - 16:10
**safety** [2] - 22:11, 27:7
**salt** [1] - 5:14
**sat** [1] - 21:2
**saw** [1] - 19:1
**seat** [1] - 6:3
**seated** [2] - 2:4, 6:3
**second** [1] - 19:12
**Second** [1] - 1:17
**section** [2] - 2:15, 2:16, 21:22, 21:24
**Section** [1] - 2:11
**sections** [1] - 2:22
**see** [1] - 13:19
**seem** [2] - 16:2, 18:4
**Semmler** [3] - 1:20, 28:14, 28:14
**sentence** [1] - 24:18
**serious** [1] - 23:15
**seriousness** [1] - 25:10
**service** [1] - 19:24
**services** [5] - 3:23, 4:1, 4:13, 4:21, 26:15
**set** [1] - 4:4
**seven** [1] - 9:18
**Seventh** [2] - 1:10, 1:14
**Shelly** [2] - 1:20, 28:14
**short** [2] - 18:21, 20:5
**showing** [3] - 19:23, 20:5, 26:24
**sic)** [1] - 2:22
**significant** [2] - 15:13, 24:18
**significantly** [1] - 23:9
**sincerity** [1] - 18:2
**Sioux** [1] - 1:21
**sister** [1] - 8:8
**six** [6] - 7:9, 9:18, 9:21, 10:3, 12:5, 21:2
**Sixth** [1] - 1:20
**slate** [1] - 4:11
**sobriety** [1] - 5:2
**society** [2] - 16:3, 16:9
**someone** [4] - 20:17, 20:25, 23:16, 26:15
**sometimes** [1] - 24:19
**somewhat** [1] - 24:25
**somewhere** [1] - 16:1
**soon** [1] - 17:4
**sort** [5] - 14:21, 22:24,

24:21, 25:6, 27:18
**Southeast** [3] - 1:10, 1:14, 1:17
**standpoint** [1] - 15:19
**started** [1] - 11:14
**state** [2] - 6:9, 10:7
**STATES** [2] - 1:1, 1:3
**States** [9] - 1:9, 1:14, 2:5, 2:6, 2:7, 2:11, 2:15, 19:5, 27:9
**statute** [2] - 20:10, 23:4
**statutes** [3] - 21:19, 21:24, 22:18
**statutory** [2] - 18:12, 18:25
**stay** [1] - 24:16
**step** [2] - 6:2, 14:4
**stepfather** [1] - 21:15
**stepparents** [1] - 15:14
**still** [1] - 8:16
**stop** [1] - 5:24
**stopped** [1] - 4:24
**straight** [1] - 18:3
**Street** [2] - 1:17, 1:20
**stress** [1] - 17:17
**subject** [5] - 5:11, 5:17, 20:17, 20:21, 21:7
**subsequent** [1] - 19:3
**substance** [1] - 14:10
**substantive** [1] - 26:1
**success** [1] - 25:3
**suggested** [1] - 17:11
**suggesting** [1] - 2:20
**Suite** [1] - 1:17
**supervised** [1] - 7:24
**supervision** [1] - 17:2
**supervisor** [1] - 8:12
**supply** [1] - 24:4
**support** [1] - 8:8
**suppose** [2] - 3:3, 5:12
**supposed** [2] - 23:4, 23:11
**swindled** [1] - 20:23
**SWORN** [1] - 6:1

## T

**tail** [1] - 19:2
**teeter** [1] - 22:24
**teetering** [1] - 22:25
**temporarily** [1] - 7:13
**temporary** [2] - 18:21, 19:4
**temptation** [2] - 24:20, 24:23
**ten** [1] - 23:7
**tending** [1] - 19:25
**term** [2] - 4:22, 16:3
**terms** [3] - 7:25, 25:9, 25:10
**terrible** [1] - 21:9
**tested** [1] - 24:16
**testify** [1] - 5:9

**testimony** [1] - 20:22
**THE** [50] - 1:1, 1:1, 2:4, 2:24, 3:15, 4:6, 4:12, 4:16, 5:5, 5:16, 5:22, 6:2, 9:9, 11:4, 11:21, 11:24, 12:2, 12:3, 12:5, 12:6, 12:8, 12:9, 12:11, 12:12, 12:16, 12:17, 12:18, 12:20, 12:25, 13:1, 13:4, 13:5, 13:9, 13:10, 13:17, 13:18, 13:23, 14:1, 14:3, 14:7, 14:13, 14:23, 15:2, 15:9, 17:20, 21:21, 27:15, 27:16, 27:24, 28:2
**theft** [2] - 16:25, 25:5
**thinking** [1] - 14:16
**third** [1] - 22:7
**third-party** [1] - 22:7
**thirty** [1] - 18:14
**thirty-one** [1] - 18:14
**three** [4] - 15:22, 15:25, 17:12, 17:14
**ties** [3] - 23:25, 24:1
**title** [1] - 7:5
**Title** [2] - 13:7, 13:22
**today** [5] - 15:5, 19:18, 21:19, 23:20, 27:13
**took** [1] - 20:24
**totally** [1] - 17:7
**touch** [1] - 17:24
**town** [2] - 6:11, 6:20
**track** [1] - 25:17
**Transcribed** [1] - 1:20
**TRANSCRIPT** [1] - 1:4
**transcript** [9] - 2:1, 3:4, 3:6, 3:14, 3:17, 4:2, 4:7, 28:7, 28:12
**transport** [1] - 9:3
**trauma** [1] - 17:17
**travel** [1] - 6:24
**treatment** [4] - 14:10, 21:5, 24:10, 24:15
**trial** [4] - 18:10, 22:3, 27:6, 27:9
**tried** [2] - 13:6, 20:23
**Trinity** [1] - 7:2
**troubles** [1] - 25:7
**trusted** [1] - 20:25
**try** [1] - 18:3
**trying** [3] - 3:17, 10:6, 10:8
**turning** [2] - 23:19, 25:23
**two** [6] - 4:19, 4:22, 7:11, 10:7, 10:9, 10:12
**types** [1] - 18:22

## U

**U.S** [1] - 1:19
**U.S.C** [2] - 2:16, 21:24
**under** [19] - 2:14, 2:16, 2:21, 2:25, 3:2, 3:18, 18:8,

18:21, 19:15, 20:6, 20:7, 20:9, 20:10, 20:16, 21:18, 22:19, 24:23, 26:8, 26:11

**unfortunately** [1] - 24:14
**UNITED** [2] - 1:1, 1:3
**United** [9] - 1:9, 1:14, 2:5, 2:6, 2:7, 2:11, 2:15, 19:5, 27:9
**UnityPoint** [1] - 7:7
**universe** [1] - 16:21
**unless** [1] - 7:24
**up** [4] - 11:24, 16:8, 18:18, 22:13
**user** [1] - 10:16

## V

**various** [1] - 21:11
**versus** [2] - 2:5, 16:8
**violated** [1] - 16:13
**violence** [1] - 23:14
**violent** [1] - 25:12
**visited** [1] - 12:6
**Vista** [1] - 10:23
**voluntary** [1] - 8:2
**vs** [1] - 1:5

## W

**wants** [1] - 5:8
**watch** [1] - 6:2
**weeks** [1] - 25:2
**weighs** [1] - 23:16
**weight** [2] - 15:17, 23:17
**well-meaning** [1] - 21:15
**west** [2] - 11:25, 12:1
**whatsoever** [2] - 19:23, 20:1
**wife** [1] - 21:16
**Williams** [1] - 27:17
**willing** [1] - 9:3
**willingness** [1] - 20:13
**witness** [1] - 5:21
**WITNESS** [12] - 6:1, 12:2, 12:5, 12:8, 12:11, 12:16, 12:18, 12:25, 13:4, 13:9, 13:17, 28:17
**woman** [2] - 15:6, 20:1
**women** [1] - 14:18
**word** [2] - 20:25, 24:9
**works** [2] - 7:2, 9:2

## X

**XIX** [2] - 13:7, 13:22

## Y

**year** [1] - 5:3
**years** [6] - 7:9, 9:18, 9:21,

12:5, 15:11, 23:7
**young** [1] - 14:18
**yourself** [1] - 24:4

*Contact Shelly Semmler at 712-233-3846 or ssemmlerreporting@gmail.com*
*Certified Realtime & Computer Aided Transcription*
Case 2:21-cr-01009-CJW-MAR    Document 56    Filed 03/16/22    Page 34 of 34